**VELSICOL CHEMICAL CORP.**

v.

**UNITED STATES.**

**C.D. 3346; Protest No. 59/6888–15587.**

United States Customs Court,
Third Division.
March 5, 1968.

---

---

Milton Schwartz, New York City, Stein & Shostak, Los Angeles, Cal. (S. Richard Shostak and Marjorie M. Shostak, Los Angeles, Cal., of counsel), associate counsel, for plaintiff.

Edwin L. Weisl, Jr., Asst. Atty. Gen. (Sheila N. Ziff, Mollie Strum, and S. William Barr, New York City, trial attorneys), for defendant.

Before RICHARDSON and LANDIS, Judges.

LANDIS, Judge.

The merchandise of these eight protests, consolidated for trial, is sodium paranitrophenate (hereinafter referred to as phenate), a product of Italy, imported at New Orleans. Phenate is a coal tar derivative. As such, it was classified under paragraph 27(a) (3) (5) of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, T.D. 52739. Duty, under that classification was assessed at 3½ cents per pound and 25 per centum ad valorem.

Plaintiff concedes that the paragraph 27 classification and duty assessment are correct. (R. 3.) The protest claim, substantially the same in each of the protests, recites as follows:

Notice of dissatisfaction is hereby given with and Protest is hereby made against your decision, liquidation and assessment of duties at 3½ cents per pound and 25% ad valorem or other rate or rates on the entry above named. The reasons for objection under the Tariff Act of 1930, and amendments thereto, are that the weight of the merchandise was not obtained in accordance with regulations and that the weighers proceeded upon a wrong principle in performing the duty imposed upon them by law.

In open court at Houston, where trial commenced, plaintiff amplified the pleading, stating:

It is the plaintiff's contention that the weight, for the purpose of paragraph 27(a) (3) (5) should be the same weight upon which the value is based, or the hundred per cent basis rather than its net weight, including water. [R. 4.]

The facts necessary to point up the disability which we find in these protests can be briefly summarized. The official papers are in evidence. They bear official notations that the sodium phenate was appraised at a unit price 100 percent (dry weight) basis and charged with duty in liquidation on the net (wet) weight basis.

Sodium phenate is a yellow solid. If allowed to dry, it will spontaneously decompose. It will also decompose if allowed to overheat. The product, in a dry state, is flammable. Commercially, therefore, sodium phenate is never handled in a dry state. It is too dangerous. The form in which sodium phenate is dealt in commercially is paste, its imported form here. Sodium phenate is made into a paste by a mechanical mix of the phenate with water. The excess water is filtered off but the paste retains moisture which ranges from 25 percent to 30 percent by weight. The water contributes no property to the phenate paste but becomes a constituent part of the paste in the mix. It is introduced into the phenate strictly for safety in

transportation and handling. Sodium phenate paste is always sold commercially on a dry weight basis, that is, less the weight of the moisture.

The sodium phenate of these protests was imported to make parathion, an agricultural insecticide. Parathion is made by dissolving the phenate paste in acetone. This forms a solution. Under controlled conditions, a phosphate intermediate is slowly added to the solution. The phosphate reacts with the phenate to form parathion. Since parathion does not mix with water, the water or moisture in the sodium phenate separates out. The water is discarded but not before the phenate and phosphate intermediate react. If discarded before then, the material would become dangerous and hazardous to work with.

Both sides have filed briefs arguing the merits of duty assessment on the net (wet) weight basis as against the claimed 100 percent (dry) weight basis. Only passing reference is made to section 507 of the Tariff Act of 1930. This, despite plaintiff's objection to testimony adduced with respect to section 507, on which the trial judge reserved decision (R. 103), advising counsel that he presumed their briefs would "cover the objections to evidence the defendant has made and the application of section 507 of the Tariff Act so as to aid the court in ruling on that evidentiary issue * * *." (R. 116.) Plaintiff's brief merely reiterates its objections on trial that no claim is made that moisture is excessive in the sense of section 507. Defendant footnotes (defendant's brief, page 1) the fact that plaintiff made no application to allow for excessive moisture under section 507.

■ Where duties are based on the quantity of merchandise, the quantity is that at the time of importation. 19 U.S.C., section 1315. Section 507 makes allowance for certain worthless portions of imported merchandise as follows:

SEC. 507. TARE AND DRAFT.

The Secretary of the Treasury is hereby authorized to prescribe and issue regulations for the ascertainment of tare upon imported merchandise, including the establishment of reasonable and just schedule tares therefor, but in no case shall there be any allowance for draft or for impurities, other than excessive moisture and impurities not usually found in or upon such or similar merchandise.

Section 15.7 of the customs regulations, prescribed by the Secretary of the Treasury, provides as follows:

15.7 *Excessive moisture and other impurities; application for allowance; procedure.*—(a) An application for an allowance for excessive moisture or other impurities under section 507, Tariff Act of 1930, shall be made on customs Form 4317 and filed with the collector of customs. The application shall be filed within 10 days after the report of weight has been received by the collector or within 10 days after the date upon which the entry or a related document was endorsed to show that invoice weight has been accepted by the entry officer, customs inspector, or other customs officer.

(b) The collector shall cause such investigation to be made as may be necessary to determine whether or not the merchandise contains excessive moisture or other impurities not usually found in or upon such or similar merchandise, together with the amount thereof, and, if necessary, may refer the application to the appraiser for such determination.

(c) If the collector is satisfied from the reports received that the claim is valid, due allowance shall be made in the liquidation of the entry. (Sec. 507, 46 Stat. 732; 19 U.S.C. 1507.)

As previously stated, we have not had the assistance of counsel on the application of section 507 and the regulations bearing upon the facts here. However, as questions as to the admissibility of evidence concerning plaintiff's noncompliance with section 507 were objected to by plaintiff and the trial judge reserved ruling on that question, the materiality of compliance or noncompliance

with section 507 is squarely before us for decision. Plaintiff has contended section 507 is limited to an application for allowance for excessive moisture as distinguished from a claim for allowance for all moisture included in the dutiable weight of merchandise. We note plaintiff's attempted distinction but, in our opinion, it is a distinction without a difference. See United States v. Ingram & Co., 17 CCPA 228, T.D. 43668; The Dan Malloy Company v. United States, 35 Cust.Ct. 315, Abstract 59486. In Cinder Products Corporation v. United States, 52 Cust.Ct. 49, C.D. 2434 (1964), this division of the court dismissed a protest on facts which bear striking similarity to the facts here. The merchandise in *Cinder Products* was pumice stone containing about 20 percent moisture. It was assessed on a dutiable weight which included the moisture. The protest claimed that the pumice stone should be assessed on a dry weight basis. No application had been made for allowance under section 507. The regulations under section 507 being mandatory, this division of the court dismissed the protest citing, Socony Vacuum Oil Co., Inc. v. United States, 44 CCPA 83, C.A.D. 641.

On the authority of *Cinder Products,* supra, which we feel bound to follow, plaintiff's objections to the evidence concerning its noncompliance with section 507 are overruled, and these protests are dismissed for failure to comply with section 507. Judgment will be entered accordingly.

RICHARDSON, J., concurs.